# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

JOEL SANMIGUEL,
Defendant and Appellant.

S287786

Second Appellate District, Division Six
B328160

Ventura County Superior Court
2022002116

July 30, 2026

Justice Kruger authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Groban, Evans, and Egerton[*] concurred.

---

[*]    Associate Justice of the Court of Appeal, Second Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. SANMIGUEL

S287786


Opinion of the Court by Kruger, J.


For nearly half a century, our law has steadfastly prohibited discrimination on the basis of race or other protected status in selecting juries. (*People v. Wheeler* (1978) 22 Cal.3d 258, 273 (*Wheeler*); *Batson v. Kentucky* (1986) 476 U.S. 79, 91 (*Batson*).) The reason for this prohibition is as familiar as it is vital to the operation of a system that guarantees equal treatment to all. As our cases have repeatedly and consistently recognized, discrimination in jury selection harms not only litigants and persons called to jury service, but the very integrity of our system of justice.

To enforce the prohibition, the courts in *Wheeler* and *Batson* set forth a procedural framework for determining whether a litigant's decision to peremptorily challenge a prospective juror was motivated by improper bias. After years of experience applying this framework, commentators increasingly came to question whether the framework is adequate to identify and curb improper discrimination when it occurs. In response to these concerns, the Legislature enacted Code of Civil Procedure section 231.7, which establishes a new framework for evaluating discrimination-related objections to peremptory challenges. Under the statute, if an objection is made to a peremptory challenge, the striking party must give its reasons for exercising the peremptory challenge. (Code Civ. Proc., § 231.7, subds. (b), (c) (section 231.7).) If, after considering the striking party's reasons, a "court determines

1

there is a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, as a factor in the use of the peremptory challenge, then the objection shall be sustained."  (§ 231.7, subd. (d)(1) (section 231.7(d)(1).)

This case concerns the provisions of section 231.7 addressing a situation in which the striking party gives reasons relating to the prospective juror's demeanor, behavior, or manner of responding to questions (collectively referred to as behavior-based reasons).  Under the statute, these reasons "are presumptively invalid unless the trial court is able to confirm that the asserted behavior occurred . . . .  Even with that confirmation, the counsel offering the reason shall explain why the asserted demeanor, behavior, or manner in which the prospective juror answered questions matters to the case to be tried."  (§ 231.7, subd. (g)(2) (section 231.7(g)(2).)

Here, a prosecutor listed multiple reasons for striking a prospective juror, including a behavior-based reason:  that the prospective juror was not as engaged and was less attentive than other prospective jurors.  The trial court confirmed the prosecutor's observations and overruled the defense's section 231.7 objection without insisting on a further explanation of why these behaviors "matter[] to the case to be tried."  (§ 231.7(g)(2).)  The Court of Appeal affirmed.  It concluded that, notwithstanding the absence of such explanation, the prosecutor's and court's observations about the prospective juror's attentiveness were not only sufficient to overcome the statutory presumption that the behavior-based reason was invalid, but also independently sufficient to establish the lawfulness of the strike.

2

The Court of Appeal's resolution of the issue reveals a number of points of uncertainty in the developing law of section 231.7. We now clarify two general principles about behavior-based reasons under section 231.7, subdivision (g). First, to overcome the presumption that a behavior-based reason is invalid, the striking party must offer an explanation that is sufficient to allow the court to evaluate the reason as part of its overarching determination of whether an objective observer would view race or other protected status as a factor in the exercise of the peremptory challenge. A court may be able to confirm, for instance, that a prospective juror is not making eye contact. But it cannot adequately evaluate the striking party's motivation unless the striking party tells the court what it is inferring from the behavior about how the prospective juror would perform the duties of a juror — as the statute puts it, why the lack of eye contact "matters to the case to be tried." (§ 231.7(g)(2).) Ultimately, the explanation requirement is a functional one, and the statute does not prescribe a rigid sequence of steps or a particular verbal formula that must be employed to satisfy it.

Second, whether a behavior-based reason is found to be valid or invalid is not dispositive of the ultimate inquiry into the presence of unlawful discrimination. If the reason is invalid, it may not be relied on to justify the strike. While reliance on an invalid reason is generally a significant consideration — and, depending on the circumstances, may prove dispositive — a court still must consider any other reasons proffered and other relevant circumstances to determine whether the strike was unlawful under section 231.7. Conversely, finding that the statutory presumption of invalidity has been overcome is not necessarily dispositive of the lawfulness of the strike. A court

may conclude that a behavior-based reason is valid and yet determine, after weighing other reasons and relevant circumstances, that an objective observer would still likely conclude that race or other protected status was a factor in the peremptory challenge.

Because the Court of Appeal in this case did not apply these principles in evaluating the section 231.7 challenge, we reverse and remand for further proceedings.

## I.

### A.

Because this is our first case interpreting section 231.7, we begin by reviewing the relevant legal background in some detail.

In selecting a jury, litigants may raise two types of challenges to prospective jurors: for cause and peremptory. (*Wheeler*, *supra*, 22 Cal.3d at p. 273; Code Civ. Proc., § 225, subd. (b).) For-cause challenges are limited to concerns about prospective juror qualifications and actual or implied bias. (Code Civ. Proc., § 225, subd. (b)(1) [permitting "[a] challenge for cause" for "[g]eneral disqualification," "[i]mplied bias," or "[a]ctual bias"]; see *id.*, § 228 [defining "general disqualification"].) Peremptory challenges, in contrast, were "designed to be used 'for any reason, or no reason at all.' " (*People v. Scott* (2015) 61 Cal.4th 363, 387 (*Scott*).) Peremptory challenges are not constitutionally required, but they "traditionally have been viewed as one means of assuring the selection of a qualified and unbiased jury." (*Batson*, *supra*, 476 U.S. at p. 91.) The idea is that peremptory challenges "allow[] removal of a biased juror" when "the party either cannot establish his reason by normal methods of proof or cannot do so without causing embarrassment to the challenged venireman

and resentment among the remaining jurors." (*Wheeler* at p. 275; see 4 Blackstone, Commentaries 353.)

The federal and state Constitutions, however, place important limits on parties' ability to strike prospective jurors: While peremptory strikes may be made for virtually any reason, they may not be made because of the prospective juror's race or other protected status. Nearly 50 years ago, in *Wheeler*, this court held that "the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution." (*Wheeler, supra*, 22 Cal.3d at pp. 276–277.) While it is acceptable to "seek to eliminate a specific bias" derived from personal experience, a party that "presumes that certain jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds . . . and peremptorily strikes all such persons for that reason alone" violates the right to "an impartial jury guaranteed by the California Constitution." (*Id.* at p. 276.) A decade later, the United States Supreme Court held that the federal "Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." (*Batson, supra*, 476 U.S. at p. 89.) The court explained that "[p]urposeful racial discrimination . . . denies [a defendant] the protection that a trial by jury is intended to secure": " '[A] body . . . composed of the peers or equals of the person whose rights it is selected or summoned to determine.' " (*Id.* at p. 86.) But the harm "extends beyond that inflicted on the defendant"; it also harms the prospective jurors and,

ultimately, operates to "undermine public confidence in the fairness of our system of justice." (*Id*. at p. 87.)

The courts in *Wheeler* and *Batson* set forth a substantially similar three-step burden-shifting inquiry to guide the trial court's constitutional review of a peremptory strike. (*Scott, supra*, 61 Cal.4th at p. 383.) Step one of the *Batson/Wheeler* test requires the defendant to "make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.' " (*Johnson v. California* (2005) 545 U.S. 162, 168.) If the defendant makes out a prima facie case, the second step shifts the burden " 'to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes." (*Ibid*.) At step three, the trial court decides " 'whether the opponent of the strike has proved purposeful racial discrimination.' " (*Ibid*.)

After many years of experience employing this framework, commentators in California and in other parts of the country increasingly raised concerns about its adequacy in addressing the problem of discrimination in jury selection. Several states across the country began to study the issue and consider potential reforms. (See Jury Selection Work Group: Final Report to the Supreme Court of California (July 2022) p. 2, fn. 2 [describing efforts in Washington, Pennsylvania, Arizona, Connecticut, and New Jersey].)[1] In 2020, this court appointed a workgroup to study issues related to discrimination in jury

---

[1] This report is available at <https://newsroom.courts.ca.gov/sites/default/files/newsroom/2022-09/Jury%20Selection%20Work%20Group%20Final%20Report.pdf> (as of July 30, 2026). All internet citations in this opinion are archived by year, docket number, and case name at <http://courts.ca.gov/opinions/cited-supreme-court-opinions>.

selection in California. (*Id.* at p. 1.) While that effort was still underway, the Legislature passed Assembly Bill No. 3070 (2019–2020 Reg. Sess.) (Assembly Bill No. 3070), a reform proposal modeled after a rule recently adopted in the state of Washington. (Stats. 2020, ch. 318; Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3070 (2019–2020 Reg. Sess.) as amended May 4, 2020, p. 10 ["The procedures laid out in [Assembly Bill No. 3070] are modeled on the new rule used in Washington courts (GR 37) and tailored by various stakeholders and Committee staff in order to increase clarity and workability"].)

The legislative findings and declarations accompanying Assembly Bill No. 3070 plainly describe the impetus for reform. Finding "that peremptory challenges are frequently used in criminal cases to exclude potential jurors from serving based on their race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, and that exclusion from jury service has disproportionately harmed African Americans, Latinos, and other people of color," the Legislature crafted procedures intended to further the important "purpose of eliminating the use of group stereotypes and discrimination, whether based on conscious or unconscious bias, in the exercise of peremptory challenges." (Stats. 2020, ch. 318, § 1, subds. (b), (c).) The statute, now codified as Code of Civil Procedure section 231.7, "applies in all jury trials in which jury selection begins on or after January 1, 2022." (§ 231.7, subd. (i).)

## B.

Section 231.7 prohibits removing a prospective juror on the basis of the prospective juror's actual or perceived "race,

ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation." (§ 231.7, subd. (a).) (For simplicity's sake, we refer in this opinion to "race or other protected status.") To effectuate this overarching prohibition, the statute sets out a framework that differs from *Batson/Wheeler* in several important respects.

If another party or the trial court objects to the use of a peremptory challenge, then the party that exercised the peremptory challenge must state the reasons for the challenge; there is no requirement that the objecting party first establish a prima facie case of discrimination. The trial court evaluates the reasons given and rules on the objection, stating its reasons on the record. (§ 231.7, subds. (b)–(d).) In ruling on the objection, the court may "not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge." (§ 231.7(d)(1).) Rather, the court evaluates "the reasons given . . . in light of the totality of the circumstances." (*Ibid.*; see *id.*, subd. (d)(3) [articulating a non-exhaustive list of circumstances the court may consider, such as whether: "[t]he objecting party is a member of the same perceived cognizable group as the challenged juror"; "[t]he alleged victim is not a member of that perceived cognizable group"; and "race [or other protected status] . . . bear on the facts of the case to be tried"].)

Perhaps the most significant departure from *Batson/Wheeler* concerns the standard the court applies in making this determination. In passing section 231.7, the Legislature found that "requiring proof of intentional bias," as *Batson/Wheeler* does, "renders the procedure ineffective." (Stats. 2020, ch. 318, § 1, subd. (b).) In contrast to *Batson/Wheeler*, the ultimate question under section 231.7 is

not whether the striking party has purposefully discriminated on the basis of race or other protected status. The question is, rather, whether "there is a substantial likelihood that an objectively reasonable person would view race [or other protected status] . . . as a factor in the use of the peremptory challenge." (§ 231.7(d)(1).) An "objectively reasonable person" is one who is "aware that unconscious bias, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in the State of California." (*Id.*, subd. (d)(2)(A).)

The statute sets out two categories of reasons that, because of their association with discrimination, are treated as invalid unless certain conditions are met. (§ 231.7, subds. (e), (g); see Stats. 2020, ch. 318, § 1, subd. (b) ["many of the reasons routinely advanced to justify the exclusion of jurors from protected groups are in fact associated with stereotypes about those groups or otherwise based on unlawful discrimination"].) These reasons are presumed invalid unless rebutted; there is no longer a presumption of validity, in contrast to the approach in our *Batson*/*Wheeler* case law. (Cf. *People v. Gutierrez* (2017) 2 Cal.5th 1150, 1158 [" ' "[u]nless a discriminatory intent is inherent in the [striking party's] explanation," ' the reason will be deemed neutral"]; see also *People v. Mai* (2013) 57 Cal.4th 986, 1052 (*Mai*) ["the prosecutor's demeanor observations, even if not explicitly confirmed by the record, are a permissible race-neutral ground for peremptory excusal, especially when they were not disputed in the trial court"].)

The first category is set out in section 231.7, subdivision (e) (section 231.7(e)), which provides: "A peremptory challenge for any of the following reasons is presumed to be invalid unless the party exercising the

peremptory challenge can show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race . . . [or other protected status], and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case." (§ 231.7, subd. (e); see *id.*, subd. (f) [setting out further instructions for the application of the clear and convincing standard].) Subdivision (e) then lists a number of reasons that are, broadly speaking, reasons disproportionately associated with particular racial or other cognizable groups. These include, for instance, "having a negative experience with law enforcement," "[n]ot being a native English speaker," and "[e]mployment in a field that is disproportionately occupied by members" of cognizable groups. (*Id.*, subd. (e)(1), (7), (10); see also *id.*, subd. (e)(13) [adding "[a]ny justification that is similarly applicable to a questioned prospective juror or jurors, who are not members of the same cognizable group as the challenged prospective juror, but were not the subject of a peremptory challenge by that party"].)

The second category, set forth in section 231.7, subdivision (g), is the category at issue in this case. Subdivision (g)(1) lists reasons that have "historically been associated with improper discrimination in jury selection" that relate to the prospective juror's behavior, demeanor, or manner of answering questions. (§ 231.7, subd. (g)(1).) The reasons are: (A) "The prospective juror was inattentive, or staring or failing to make eye contact"; (B) "The prospective juror exhibited either a lack of rapport or problematic attitude, body language, or demeanor"; and (C) "The prospective juror provided unintelligent or confused answers." (§ 231.7, subd. (g)(1)(A)–(C).) Subdivision (g)(2) provides that such reasons "are

presumptively invalid unless the trial court is able to confirm that the asserted behavior occurred, based on the court's own observations or the observations of counsel for the objecting party. Even with that confirmation, the counsel offering the reason shall explain why the asserted demeanor, behavior, or manner in which the prospective juror answered questions matters to the case to be tried." (§ 231.7(g)(2).)

The statute states that if a court finds a peremptory challenge improper during jury selection and the objecting party so requests, the court must "[q]uash the jury venire and start jury selection anew." (§ 231.7, subd. (h)(1).) Otherwise, the court may seat the prospective juror, provide the objecting party additional challenges, or "[p]rovide another remedy as the court deems appropriate." (§ 231.7, subd. (h)(3)–(5).)

A denial of a section 231.7 objection "shall be reviewed by the appellate court de novo, with the trial court's express factual findings reviewed for substantial evidence." (§ 231.7, subd. (j).) "The appellate court shall not impute to the trial court any findings, including findings of a prospective juror's demeanor, that the trial court did not expressly state on the record," and it "shall not speculate as to or consider reasons that were not given to explain either the party's use of the peremptory challenge or the party's failure to challenge similarly situated jurors who are not members of the same cognizable group as the challenged juror." (*Ibid.*) The statute instructs, finally: "Should the appellate court determine that the objection was erroneously denied, that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (*Ibid.*)

11

## C.

Defendant Joel SanMiguel was tried by jury for willful, deliberate, premeditated attempted murder and assault with a deadly weapon, along with associated enhancements. (Pen. Code, §§ 187, subd. (a), 664; *id.*, § 245, subd. (a)(1).) Jury selection commenced in August 2023, more than a year after Code of Civil Procedure section 231.7 became applicable. The prosecutor exercised a peremptory challenge to excuse prospective juror S.M. Defense counsel made a section 231.7 objection, stating his client, SanMiguel, is "of Latino descent" and "[S.M.], as far as [defense counsel] could tell, is — was the only Latino man left of the 18." Citing section 231.7, the trial court asked the prosecutor to justify the strike.

The prosecutor initially gave several reasons. First, "the victim in this case . . . is also Hispanic. I wouldn't have a reason to kick Hispanic people when I have a Hispanic on Hispanic crime." Second, S.M. "didn't have much of anything to say. His responses were extremely brief." Third, "[t]here are other people in the following six that are on the front that I believe will be jurors that I prefer more to [S.M.]." And fourth, another prospective juror "has a Hispanic surname. I have not kicked her."

The trial court requested clarification to understand "exactly what the explanation was because the explanation sounded like it was [S.M.] didn't really say much of anything." The prosecutor reiterated that S.M. "did not have much to say about what my questions were." The prosecutor then added "another" reason: that S.M. "was not fully following some of the orders from the Court. He walked out with papers, walked back in during breaks." The prosecutor clarified he was referring to

S.M. leaving with the court questionnaire, to which the trial court responded it never "gave any orders about that" — although it "would have if [it] would have thought about it." The prosecutor added "that [S.M.] walked back in when the rest of the jury had already been excused. . . . [Y]ou look at these small little things of what jurors are doing and how close they're paying attention to the process." The prosecutor went on to explain that he felt other prospective jurors were "being more attentive" and "giving more eye contact," whereas S.M. was "kind of looking down. I don't feel like he's being as engaged as other people are."

The trial court "confirm[ed] exactly what the prosecutor did say . . . about [S.M.'s] body language." It "notice[d] that . . . [S.M.] ha[d] a very flat affect, and he [was] looking down most of the time. He [was] not responding to questions the same way everybody else d[id]. There [was] no — he's not making eye contact at all. He was doing the same thing with the Court." The court continued "that [S.M.] did enter the courtroom at a time when nobody else did," which was not "a violation of a Court order, necessarily, but it show[ed] that he's not paying attention to what everybody else is doing." The court "den[ied] the motion based on 231.7," reiterating that it "understands what the prosecutor is saying, and the Court can confirm the same thing."

At the completion of trial, the jury convicted SanMiguel of attempted premeditated murder (Pen. Code, §§ 187, subd. (a), 664) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)). The jury found true that SanMiguel personally used a deadly and dangerous weapon (Pen. Code, § 12022, subd. (b)(1)) and that he personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)). The trial court sentenced

SanMiguel to an indeterminate term of life with the possibility of parole after seven years for the attempted murder, consecutive to four years for the deadly weapon and great bodily injury enhancements.

On appeal, SanMiguel argued the trial court erred in denying his section 231.7 objection. A divided Court of Appeal affirmed the denial. The majority acknowledged that several of "the prosecutor's stated reasons for challenging S.M." were "presumptively invalid under section 231.7, subdivision (g)" because they "critiqued some combination of S.M.'s demeanor and inattentiveness." (*People v. SanMiguel* (2024) 105 Cal.App.5th 880, 889–890 (*SanMiguel*).) The majority added that "section 231.7, subdivision (g)(2) contains both ' "confirmation" ' and ' "explanation" ' requirements," and while the majority questioned "why behaviors like inattentiveness would require further explanation," it acknowledged that "the prosecutor and trial court could have made a more extensive and thorough inquiry." (*Id.* at pp. 890–891.) The majority concluded, however, that reversal was unwarranted because S.M.'s "lack of attention alone" both "overc[ame] the presumption of invalidity" and "was a sufficient reason for his dismissal." (*Id.* at p. 891.) The majority reasoned: "No matter what a person's background, race, or economic standing, if the juror does not pay attention, the juror does not belong on any jury." (*Ibid.*)[2]

---

[2] Justice Yegan also wrote a concurring opinion. (*SanMiguel, supra*, 105 Cal.App.5th at pp. 891–893 (conc. opn. of Yegan, J.).) He opined that the automatic reversal requirement in section 231.7, subdivision (j) is unconstitutional

Justice Cody, dissenting in part, "disagree[d] . . . with the majority's conclusion that the presumption of invalidity was overcome." (*SanMiguel, supra,* 105 Cal.App.5th at p. 894 (dis. opn. of Cody, J.).) Because the "prosecutor never explained why S.M.'s behavior 'matter[ed] to the case to be tried,' " Justice Cody concluded that the court "must treat as conclusive the presumption that [S.M.] was excused for invalid, discriminatory reasons." (*Id.* at pp. 894–895 (dis. opn. of Cody, J.).) Justice Cody noted: "One may well wonder why behaviors like inattentiveness would require further explanation." (*Id.* at p. 895 (dis. opn. of Cody, J.).) But the court was not, in her view, "at liberty to delete the unambiguous explanation requirement." (*Ibid.*) Justice Cody added that "[t]he prosecutor's remaining reasons for challenging S.M. [were] unsupported by the record or [were] otherwise unpersuasive." (*Ibid.*) We granted review to address the court's interpretation of section 231.7, subdivision (g) (section 231.7(g)).

## II.

We consider the interpretation of section 231.7(g) de novo, reading the provision in its broader statutory context and giving the language its usual and ordinary meaning. (*People v. Castillolopez* (2016) 63 Cal.4th 322, 329.) "If the language is clear in context, our work is at an end. If it is not clear, we may consider other aids, including the statute's legislative history." (*National Lawyers Guild v. City of Hayward* (2020) 9 Cal.5th 488, 498.)

---

because it violates the separation of powers doctrine. No party in this case challenges the constitutionality of section 231.7 and we do not address the meaning or constitutionality of subdivision (j) here.

Section 231.7(g) provides, as relevant here, that when a striking party offers one of the listed behavior-based reasons — for instance, the prospective juror's inattentiveness, level of eye contact, or lack of rapport with counsel — that reason is "presumptively invalid unless the trial court is able to confirm that the asserted behavior occurred, based on the court's own observations or the observations of counsel for the objecting party. Even with that confirmation, the counsel offering the reason shall explain why the asserted demeanor, behavior, or manner in which the prospective juror answered questions matters to the case to be tried." (§ 231.7(g)(1)–(2).)

The primary issue SanMiguel raises is whether the presumptive invalidity of a behavior-based reason for striking a prospective juror has been rebutted when the trial court confirms that the asserted behavior occurred but counsel has not explained why the behavior "matters to the case to be tried." (§ 231.7(g)(2).) As the case comes to us, however, there is no dispute on this point. The Attorney General agrees that when a striking party offers a behavior-based reason, both confirmation and explanation are necessary to rebut the presumption that the reason is invalid.

Even though the parties agree on this first, threshold point, it bears further examination. The question whether the explanation required by section 231.7(g) is necessary to rebut the statutory presumption of invalidity implicates other questions regarding the meaning of the statute — including the question that does now divide the parties, which concerns what it means, precisely, to say that the presumption of invalidity has not been rebutted.

## A.

The parties' view that an explanation is required to rebut the presumption of invalidity tracks the rule articulated by appellate courts to address the issue. Although none has engaged in extensive analysis, all of the Courts of Appeal (with the arguable exception of the court in this case) have read the statute as setting up two requirements for rebutting the statutory presumption that a behavior-based reason is invalid: (1) confirmation of the behavior; and (2) an explanation of why the behavior matters. (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 794 (*Ortiz*); *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 890–891 (*Caparrotta*); *People v. Barnes* (2024) 107 Cal.App.5th 560, 582.)

We are not, however, bound by the parties' or the appellate courts' interpretation of the law; its meaning falls to us to decide. (See, e.g., *People v. Lopez* (2020) 9 Cal.5th 254, 268.) And although we ultimately take the same view, the issue is not as straightforward as the case law or the parties' agreement might suggest. Only confirmation is explicitly described in section 231.7(g)(2) as a requirement for rebutting the presumption of invalidity. The explanation requirement is set forth in a separate sentence that, on its face, neither specifies what sort of explanation is required nor says anything about rebutting the presumption. The statute does speak in mandatory terms: "The counsel offering the reason *shall* explain why the asserted demeanor . . . matters to the case to be tried." (§ 231.7(g)(2), italics added.) That of course means an explanation is required. (E.g., *In re Dannenberg* (2005) 34 Cal.4th 1061, 1087.) But does it mean that an explanation is required *to rebut the presumption of invalidity*?

It is not uncommon for statutes to impose requirements without specifying precisely what consequences flow from failure to comply. (See, e.g., *Kabran v. Sharp Memorial Hosp.* (2017) 2 Cal.5th 330, 340 [describing so-called directory statutes for which no consequence is specified]; *Edwards v. Steele* (1979) 25 Cal.3d 406, 410 ["generally, requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed"].) One might plausibly conclude that while section 231.7(g) requires an explanation, an explanation is not required to rebut the presumption of invalidity; instead, by failing to specify the consequences of failing to explain the reason, the statute leaves it to the court to decide whether it should nonetheless consider the reason as part of its totality-of-the-circumstances determination under section 231.7(d)(1).

The text alone does not clearly tell us whether an explanation is required to rebut the presumption of invalidity under section 231.7(g), so we must consider the role that these component parts are designed to play in the larger statutory scheme. (See, e.g., *People v. Pennington* (2017) 3 Cal.5th 786, 795 ["If the words appear susceptible of more than one reasonable construction, we look to other indicia of legislative intent, bearing in mind the admonition that '[t]he meaning of a statute may not be determined from a single word or sentence' [citation] and that apparent 'ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes' "].) The inquiry leads us to two further questions: (1) what kind of explanation, precisely, the statute demands; and (2) what happens if the presumption of invalidity is not overcome.

**B.**

To answer the first question, we start by reviewing the Legislature's overarching purposes in enacting section 231.7 in general, and section 231.7(g) in particular. The Legislature's uncodified findings explain its intent to "put into place an effective procedure for eliminating the unfair exclusion of potential jurors" for reasons infected by discrimination. (Stats. 2020, ch. 318, § 1, subd. (a).) One of the Legislature's central concerns was identifying and preventing conscious *and* unconscious bias affecting jury selection. (See *id.* at § 1, subd. (a) ["It is the intent of the Legislature that this act be broadly construed to further the purpose of eliminating the use of group stereotypes and discrimination, whether based on conscious or unconscious bias, in the exercise of peremptory challenges"]; see also Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3070, *supra,* as amended May 4, 2020, p. 6 ["[T]he existing procedure cannot address strikes exercised because of implicit bias, that is, unconscious or automatic attitudes and stereotypes"].) With this overarching goal in mind, the Legislature crafted procedures designed to give both trial and appellate courts more information to assess whether conscious or unconscious bias was likely a factor in the peremptory challenge — as is evidenced by the requirement that a striking party state its reasons when an objection is made, regardless of whether a prima facie case of discrimination is established (§ 231.7, subd. (c)), and the requirement that the court explain the reasons for its ruling on the record (§ 231.7(d)(1)). The former requirement in particular, as the Assembly Committee on the Judiciary analysis explained, gives "appellate courts . . . more information with which to determine whether discrimination occurred during jury selection." (Assem.

19

Com. on Judiciary, Analysis of Assem. Bill No. 3070, *supra*, as amended May 4, 2020, p. 10.)

As numerous courts have recognized, demeanor- and behavior-based reasons, by their nature, pose several potential challenges and risks. For one, " 'explanations which focus upon a venireperson's body language or demeanor . . . are subjective and can easily be used . . . as a pretext for excluding persons on the basis of race' " or other protected status. (*People v. Hicks* (2024) 103 Cal.App.5th 1229, 1240; see also *Harris v. Hardy* (7th Cir. 2012) 680 F.3d 942, 965 (*Harris*) ["Demeanor-based explanations for a strike are particularly susceptible to serving as pretexts for discrimination"].) Demeanor- or behavior-based strikes can also reflect unconsciously held attitudes rooted in stereotypes or cultural misunderstandings. (See *Batson*, *supra*, 476 U.S. at p. 106 (conc. opn. of Marshall, J.) ["A prosecutor's own conscious or unconscious racism may lead him easily to the conclusion that a prospective black juror is 'sullen,' or 'distant,' a characterization that would not have come to his mind if a white juror had acted identically"]; see also, e.g., Tremblay, *Interviewing and Counseling Across Cultures: Heuristics and Biases* (2002) 9 Clinical L.Rev. 373, 394 [explaining that cultural differences in patterns of eye contact can lead to a mistaken "inference that the listener is inattentive"].) In some cases, what a striking party interprets as a problematic attitude may in reality represent a reasonable reaction to the striking party's own exhibition of bias or other problematic behavior. (See *People v. Silas* (2021) 68 Cal.App.5th 1057, 1106 [observing, where prosecutor gave as a reason for striking a Black prospective juror that she was "openly hostile" in response to questioning about Black Lives Matter, that the prospective juror "became hostile when subjected to concededly inappropriate

questions"].) And reasons based on a person's demeanor or behavior in the trial court, unless explored on the record, are difficult to evaluate on appeal. (See, e.g., *People v. Lenix* (2008) 44 Cal.4th 602, 626 [" ' "An appellate court can read a transcript of the voir dire, but it is not privy to the unspoken atmosphere of the trial court — the nuance, demeanor, body language, expression and gestures of the various players" ' "]; accord, *id.* at p. 634 (conc. opn. of Moreno, J.) ["[P]eremptory challenges may turn upon perceptions not available to someone reading the cold record — the tone of voice, facial expression, body language, etc., of the prospective juror"]; *People v. Poore* (2022) 13 Cal.5th 266, 294 [" '[A] trial judge who observes and speaks with a prospective juror and hears that person's responses (noting, among other things, the person's tone of voice, apparent level of confidence, and demeanor), gleans valuable information that simply does not appear on the record' "].)

The requirements of subdivision (g)(2) respond to these concerns in a manner designed to advance the overarching aims of section 231.7. The requirement of the trial court's confirmation, "based on [its] own observations or the observations of counsel for the objecting party," guards against reliance on mischaracterizations or misperceptions of a prospective juror's demeanor. (§ 231.7(g)(2).) The requirement to explain the relevance of the observed behavior enables the court to assess the fit between the asserted behavior and the striking party's understanding of the significance of that behavior, to evaluate the strength or weakness of the inferences that the striking party is drawing from the behavior, and so to evaluate what the reason says about whether an objective observer would likely find conscious or unconscious bias was involved. Taken together, compliance with these requirements

means that more information is put on the record to facilitate appellate review.

To understand the function of the explanation requirement is to understand both the nature of the requirement and why it is a necessary condition for overcoming the presumption of invalidity. The statute does not specify a set of magic words the striking party must use to explain why an observed behavior matters to the case. Nor does it specify a particular sequence or order of operations in which confirmation of the behavior and explanation of its relevance must occur. While the statutory language sets forth requirements — the party must state reasons for exercising the peremptory challenge (§ 231.7, subd. (c)), and when one of those reasons is a behavior-based reason, the trial court must confirm the asserted behavior and the party must explain it (§ 231.7(g)) — the statute does not prescribe a particular verbal formula or dictate an order in which these requirements must be satisfied.[3] As such, a party may provide the requisite explanation either before or after the trial court's confirmation. Likewise, a party may provide an explanation either separately from, or together with, its statement of reasons.

---

[3] Some Courts of Appeal have, in dicta, described section 231.7(g)(2) as setting forth a "two-step process," suggesting that the court must confirm the behavior occurred before counsel may explain why the behavior matters. (E.g., *People v. Ortiz, supra*, 96 Cal.App.5th at p. 794.) The requirements are, of course, listed in this order in the statute, but nothing requires that they be fulfilled sequentially; there is no reason why counsel's explanation cannot precede the court's confirmation.

The explanation requirement is not formalistic, but functional. What the statute requires is a striking party's explanation of the relevance of an observed behavior that is sufficient to permit a court to evaluate the reason as part of the totality-of-the-circumstances inquiry under section 231.7(d)(1). That is, the explanation must provide sufficient insight into the striking party's thought process to reveal the case-related inferences that they are drawing from the observed behaviors, and thus to permit the court to evaluate whether those inferences indicate that bias played a role in the challenge. A court may be able to confirm the striking party's observation that a prospective juror was not making eye contact during questioning, for example, but the court cannot evaluate the reason as section 231.7 requires unless it knows what inferences the striking party is drawing from that behavior: Is the striking party interpreting the failure to make eye contact as a sign of timidity that would affect the prospective juror's ability to hold firm in contested deliberations? Hostility to one of the parties? Failure to pay attention? While some inferences will reveal valid concerns about a prospective juror's fitness, others may indicate bias in the form of unexamined associations, subconscious attitudes, or stereotypes.

The Court of Appeal in this case appeared to dismiss the significance of the explanation requirement because it considered the relevance of behaviors like "inattentiveness" — a behavior expressly enumerated in the statute — to be too obvious to require explanation. (See *SanMiguel*, *supra*, 105 Cal.App.5th at p. 890; see also *id*. at p. 895 (dis. opn. of Cody, J.) [also questioning why the statute requires the striking party to explain the relevance of juror inattentiveness].) For a certain *kind* of observations about inattentiveness, the Court of

Appeal makes a fair point. Fair adjudication in any trial setting requires jurors to pay careful attention to the evidence presented, the arguments of counsel, and instructions of the court. (See, e.g., *Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 411 ["The duty to listen carefully during the presentation of evidence at trial is among the most elementary of a juror's obligations. . . . Were the rule otherwise, litigants could be deprived of the complete, thoughtful consideration of the merits of their cases to which they are constitutionally entitled"]; *People v. Ramirez* (2006) 39 Cal.4th 398, 458 [affirming discharge of a juror where "the trial judge had observed that the juror had difficulty paying attention during trial and appeared to fall asleep"].)

Where the striking party observes a specific behavior that is obviously inconsistent with a prospective juror's duty to pay attention to courtroom proceedings — say, continuously sleeping while the court provides instructions — the observation alone may well be sufficient to enable a court to evaluate the reason as part of the section 231.7 analysis. No real purpose would be served by requiring the striking party to rehearse why it is important for jurors to remain awake and pay attention when the judge speaks. A reason involving a specific behavior that clearly demonstrates an inability to fulfill the basic functions of a juror already adequately explains why the observed behavior "matters to the case to be tried." (§ 231.7(g)(2).)

But the same is not true of many reasons that might relate to "inattentiveness" in some broad sense. If the striking party says a prospective juror was excused because the juror appeared not to be paying attention when another member of the jury venire was talking during a break, it is not clear what case-

related inferences the striking party is drawing about the prospective juror's ability to pay attention when court is in session. The same is true of the prospective juror who is observed staring into space while other prospective jurors are being questioned, or who frequently glances at her watch. These behavior-based reasons, without more, do not convey the case-related significance the striking party has attached to the behavior. An explanation of the relevance of these types of observations about a prospective juror's perceived inattentiveness thus serves the important purpose of surfacing the case-related inferences that the striking party is drawing, and an explanation is thus necessary for the court to evaluate whether those inferences indicate that bias played a role in the challenge.

Because nearly all behavior-based conclusions about a prospective juror's fitness for service will involve some degree of inferential reasoning, litigants should strongly err on the side of explaining what inferences they are drawing from the conduct they observe in the courtroom. The risks of failing to provide an adequate explanation are high. Ultimately, if the striking party does not offer enough information to permit the court to assess whether the behavior-based reason for the strike was infected with bias, then the statute cannot fulfill its central goal of identifying and eradicating discrimination, whether conscious or unconscious, in the selection of jurors. It follows ineluctably that the presumption of invalidity has not been rebutted.

## C.

The question remains, however: What does it mean to say the presumption of invalidity has or has not been rebutted? SanMiguel, relying on the Court of Appeal's decision in

*Caparrotta*, argues that when a behavior-based reason is invalid, that necessarily means that discrimination was likely a factor in the strike, meaning the strike must be found unlawful. (See *Caparrotta*, *supra*, 103 Cal.App.5th at p. 891.) The Attorney General disagrees. He argues that when the required explanation is not provided for a behavior-based reason, that does not necessarily resolve the challenge's lawfulness; rather, a court should proceed to the section 231.7(d)(1) totality-of-the-circumstances analysis.

To resolve this debate, we return to the statutory text. Section 231.7(g)(2) provides that "[t]he *reasons* set forth in paragraph (1) are presumptively invalid" unless the trial court confirms the behavior and counsel explains it. (Italics added.) So, by the terms of the statute, whether the confirmation and explanation requirements are satisfied goes to the validity of the section 231.7, subdivision (g)(1) *reason*. The court must still rule on the objection to the *peremptory challenge*.

Section 231.7, subdivision (d) sets forth that inquiry. The court evaluates "the reasons given to justify the peremptory challenge in light of the totality of the circumstances" without "speculat[ing] on, or assum[ing] the existence of, other possible justifications." (§ 231.7(d)(1).) "If the court determines there is a substantial likelihood that an objectively reasonable person would view race [or other protected status] . . . as a factor in the use of the peremptory challenge, then the objection shall be sustained." (*Ibid.*) This totality-of-the-circumstances inquiry is mandatory in all cases. (*Ibid.* ["The court shall evaluate the reasons given to justify the peremptory challenge in light of the totality of the circumstances"].)

When the striking party gives a behavior-based reason and the confirmation and explanation requirements for that behavior-based reason are satisfied, the court proceeds to evaluate that behavior-based reason alongside other "reasons given to justify the peremptory challenge in light of the totality of the circumstances." (§ 231.7(d)(1).) The explanation is one circumstance the court may consider in this analysis. (See *Ortiz*, *supra*, 96 Cal.App.5th at p. 804 [stating the court "may consider the substance of the prosecutor's explanation, as part of 'the totality of the circumstances' inquiry"].) Other circumstances include: the identity group of the objecting party, challenged juror, alleged victim, and witnesses; whether race or other protected status bears on the facts of the case to be tried; the type and manner of questions posed to the challenged juror; whether other prospective jurors gave similar answers; whether a reason is disproportionately associated with race or other protected status; whether a reason is unsupported by the record; and whether counsel has disproportionately used peremptory challenges against members of a protected group in the present or past cases. (§ 231.7, subd. (d)(3).) Ultimately, the court — considering the confirmed behavior-based reason, the accompanying explanation, other reasons given, and other relevant circumstances — must decide whether "there is a substantial likelihood that an objectively reasonable person would view race [or other protected status] . . . as a factor in the use of the peremptory challenge." (§ 231.7(d)(1).)

Drawing on *Caparrotta*, SanMiguel argues that when the striking party gives a behavior-based reason and the confirmation or explanation requirement for that behavior-based reason is not satisfied, the behavior-based reason becomes *conclusively* invalid. And if the reason is conclusively invalid,

27

SanMiguel argues, that means that the peremptory strike is likewise invalid, because it has conclusively been established that improper discrimination was "a factor in the use of the peremptory challenge." (§ 231.7(d)(1).) On this view, the court does not — and may not — consider any other valid reasons the striking party may proffer, nor does it consider any other relevant circumstances under section 231.7, subdivision (d)(3). SanMiguel reasons that "the Legislature would not have set up a procedure under which a trial court could overrule an objection after a peremptory challenge was *already* determined to be based, at least in part, on an invalid reason." (*Caparrotta, supra,* 103 Cal.App.5th at p. 897; see *ibid.* [concluding that the trial court properly upheld a section 231.7 objection to strikes by the defense where the court did not confirm counsel's observations about the prospective jurors' behavior, though counsel also offered other reasons for the strikes].)

This argument misreads the presumption that a section 231.7(g) behavior-based reason is "invalid" as a presumption that the reason is inherently infected with discrimination. The confusion is perhaps understandable, because, as the *Caparrotta* court observed, in both subdivisions (e) and (g), the statute lists reasons that are treated as " 'presumptively *invalid*' " without defining what " 'invalid' " means, or how a finding of invalidity relates to the overall inquiry into whether impermissible discrimination was a factor in the strike. (*Caparrotta, supra,* 103 Cal.App.5th at p. 885.)

We have no occasion here to consider the effect of failing to rebut the presumption of invalidity under section 231.7(e), which lists reasons such as "[e]xpressing a distrust of or having a negative experience with law enforcement," "[h]aving a close

relationship with people who have been stopped, arrested, or convicted of a crime," and "[h]aving a child outside of marriage." (§ 231.7(e)(1), (3), (5).) That provision contains different language and prescribes a different procedure to overcome the presumption. As to section 231.7(g), SanMiguel emphasizes introductory language stating that the listed behavior-based reasons "have historically been associated with improper discrimination in jury selection." (§ 231.7, subd. (g)(1).) But the provision contains no indication that behavior-based reasons like inattentiveness or confused answers are presumed invalid because they are *inherently* associated with group stereotypes or bias, and we see no basis to reach that conclusion. In the absence of any indication to the contrary, we presume the Legislature's concern is the distinct concern that judicial decisions have long recognized: that the nature of behavior-based reasons, particularly with regard to certain types of behavior, makes them readily available vehicles for concealing or obfuscating bias.

As a logical matter, failure to rebut the presumption that a behavior-based reason is invalid assuredly means that the reason should not be relied on to justify the strike, because the risk of pretextual or other improper use remains.[4] But failure

---

[4] Notably, this is a significant break from our *Batson*/*Wheeler* jurisprudence, where a behavior-based reason was presumed to be legitimate if the opposing party did not dispute that the behavior occurred. (*Mai, supra,* 57 Cal.4th at p. 1052.) Under the new law, unless the observed behavior is confirmed and adequately explained, the court considers any such reason as invalid in the totality-of-the-circumstances analysis. And in addressing any such reason in light of the totality of the circumstances, the court considers, with the

to rebut the presumption is not necessarily determinative of whether an objective observer would likely view discrimination as a factor in the peremptory challenge, without regard to the other circumstances present in the case. Imagine, for example, that an attorney exercises a peremptory challenge on the ground the prospective juror was rolling her eyes when the attorney was speaking, but neither the trial court nor opposing counsel saw the eye rolling. In this scenario, because the behavior cannot be confirmed, the statute states explicitly that the presumption of invalidity is not rebutted. (§ 231.7(g)(2).) But the lack of confirmation does not necessarily mean that the reason was motivated by improper discrimination; it means only that the judge or opposing counsel did not see it and so cannot verify that it occurred.[5]

The same is true for the explanation requirement. Imagine an attorney exercises a peremptory challenge because a prospective juror repeatedly and loudly sighed, in what

---

benefit of argument from both parties and among other considerations, whether its inability to confirm the behavior was due to the fact that the behavior did not actually occur, was otherwise not significant enough to register as observable, or was due to the court's attention elsewhere.

[5] To this hypothetical scenario, SanMiguel responds that if the trial court fails to observe the behavior in question, this is "unfortunate" but the invalidation of the reason is "attributable to the neglect" of the court, as well as the attorney who failed to call the behavior to the court's attention at the time. It is, however, simply not realistic to expect that even the most attentive of trial courts will witness every behavior exhibited by every one of the dozens of people occupying the courtroom at all times during jury selection. And whether reflective of neglect or not, the trial court's inability to observe the challenged behavior is not logically indicative of bias.

appeared to be an exasperated manner, during voir dire. Once the trial court and opposing counsel agree they heard the sighing, the conversation moves on, without exploring what inferences the striking party drew from the behavior about the prospective juror's performance as a juror. In this scenario, the failure to rebut the presumption of invalidity means that the trial court and reviewing court should not rely on the sighing to justify the strike. But the failure to explain the significance of the observation about the prospective juror's repeated and loud sighing does not, without more, logically establish that the reason was reflective of bias. This behavior stands in contrast to other demeanor-based behaviors, such as periodic lack of eye contact, or vaguely "problematic . . . body language" (§ 231.7(g)(2)), that are "particularly susceptible to serving as pretexts for discrimination" (*Harris*, *supra*, 680 F.3d at p. 965) and indicative of bias.

To conclude that a peremptory challenge fails if the striking party provides any behavior-based reason that is unaccompanied by confirmation from the court or an explanation by the striking party not only would test the bounds of logic, but it might well compromise the important goals that Assembly Bill No. 3070 aims to achieve. If the court were required to automatically sustain a section 231.7 objection for lack of confirmation or explanation — including when, for instance, the lack of confirmation is due to the court's inability to see the behavior when it occurred — parties may hesitate to ever give a behavior-based reason, even when the behavior-based reason is the *actual* reason for the peremptory strike. (§ 231.7(d)(1) ["The court shall consider only the reasons actually given"].) It would contravene the goals of Assembly Bill No. 3070 if attorneys were to hesitate to give their actual

reasons for exercising a peremptory challenge for fear of having the strike invalidated either at trial or on appeal because of circumstances that are unrelated to bias and, in some cases, beyond their control.[6]

Ultimately, whether a subdivision (g)(1) reason is or is not valid does not necessarily determine whether the strike is valid; in all circumstances, the ultimate inquiry for the court is whether, evaluating all of the reasons in light of the totality of the circumstances, there is a substantial likelihood that an objective observer would view race or other protected status as a factor. (§ 231.7(d)(1).)

Of course, in a situation where the court determines that a behavior-based reason is *in fact* indicative of bias, such a finding — regardless of other reasons offered for the strike — will establish for purposes of the overarching section 231.7(d)(1) inquiry that race or other protected status was "*a* factor in the use of the peremptory challenge" and thus "the objection shall be sustained." (§ 231.7(d)(1), italics added.) But the same is not true in every case in which, for whatever reason, a behavior-based reason is not confirmed or explained. The fact that counsel cited an observation about a prospective juror that the court did not, or could not, corroborate, or that counsel failed to

---

[6] It is, of course, true that even under the principles we have explained here, a striking party who raises a behavior-based reason runs the risk that a court may interpret the juror's behavior differently and thus forbid reliance on that reason. To the extent the striking party is concerned about relying on reasons related to behaviors that are ambiguous or otherwise open to interpretation, it is worth noting that, under this statute, the inferences drawn from ambiguous behaviors may most safely be explored by additional questioning related to the inference or the behavior.

explain what they perceived as its relevance, are certainly factors to consider in the totality-of-the-circumstances inquiry — as are the reasons the confirmation or explanation requirements were not satisfied. It is one thing if, for example, the confirmation requirement is not satisfied because the trial court and opposing counsel did not see a fleeting behavior, where the striking party's stated concerns about that behavior contain no suggestion of bias or pretext, and the fleeting behavior was one of several reasons for a peremptory strike. It is different, however, if the confirmation requirement is not satisfied because the trial court disagreed with counsel's characterization of an observed behavior, determined the behavior did not occur at all, or was troubled by the inference counsel drew from it. The latter scenarios indicate a greater risk that bias played a role and thus will bear differently on the section 231.7(d)(1) inquiry. But in either scenario, the court considers the failure to confirm or explain alongside the totality of circumstances to decide whether there is a substantial likelihood that an objectively reasonable person would view race or other protected status as a factor in the peremptory challenge.[7]

### D.

To sum up: Even though section 231.7(g)(2) does not say so in as many words, the statute is most reasonably read to mean that an explanation is required to overcome the presumption that a behavior-based reason is invalid. Again, the requirement is not a formalistic, but a functional one. What is

---

[7] We disapprove *People v. Caparrotta, supra,* 103 Cal.App.5th 874, 890–891, 894 and *People v. Barnes, supra,* 107 Cal.App.5th 560, 582 to the extent they articulate a different rule.

required is an explanation sufficient for the court to evaluate what the striking party perceives as the relationship between the observed behavior and the prospective juror's ability to perform the functions of a juror. While there may be rare cases in which the observed behavior is so obviously inconsistent with the role of a juror that no further explanation is required to permit meaningful evaluation, a striking party should always hesitate before assuming that any behavior-based reason is one that, in essence, speaks for itself. If the striking party does not offer enough information to permit the court to assess whether the behavior-based reason for the strike was infected with bias, then the striking party has not satisfied the explanation requirement, and the reason may not be relied on to justify the strike.

But in any event — whether the reason is considered invalid or not — the court must then proceed to ask the ultimate question under section 231.7(d)(1): Whether, based on an evaluation of all the reasons given to justify the peremptory challenge in light of the totality of the circumstances, there is a substantial likelihood that an objectively reasonable person would view race or other protected status as a factor in the strike.

## III.

With these general principles about section 231.7(g) in mind, we turn to the decision on review. The Court of Appeal in this case concluded that once the trial court confirmed the prosecutor's observations about prospective juror S.M.'s attentiveness, the presumption of invalidity was rebutted, without squarely addressing the statute's explanation requirement. It then proceeded to rely exclusively on counsel's

and the court's observations about S.M.'s behavior to conclude that an objectively reasonable person would not have perceived race as a factor in the strike.

To the extent the Court of Appeal concluded that the explanation requirement is dispensable, we conclude it erred. But neither the court nor the parties have yet had the opportunity to consider the issue in light of this court's guidance about what the prosecutor was required to explain. Specifically, neither side has yet explored whether, how, or why the prosecutor's statement of reasons did or did not convey why S.M.'s observed behaviors mattered to the case, such that the court could adequately evaluate the reason as part of its overarching determination of whether an objective observer would view race or other protected status as a factor in the exercise of the peremptory challenge. We thus allow the parties and the court to address that issue in the first instance.

We caution, however, that the answer to that question is not dispositive of the appeal. For reasons already explained, a finding that the presumption of invalidity was not overcome means the reason may not be relied on to justify the strike, but it does not, as SanMiguel has argued, definitively establish that the strike was invalid. Conversely, even if the Court of Appeal was correct in concluding that the presumption of invalidity was adequately rebutted, the Court of Appeal erred in treating a concern that S.M. was comparatively less attentive than other prospective jurors as independently dispositive of the section 231.7(d)(1) determination. The Court of Appeal may still conclude, after weighing other reasons and relevant circumstances, that an objective observer would still likely conclude that race or other protected status was a factor in the peremptory challenge.

In the decision on review, the Court of Appeal emphasized "S.M.'s lack of attention," stating that "[t]he prosecution had a legitimate reason to be concerned about S.M.'s ability to be 'fair and impartial'" because "[n]o matter what a person's background, race, or economic standing, if the juror does not pay attention, the juror does not belong on any jury." (*SanMiguel*, *supra*, 105 Cal.App.5th at p. 891, quoting § 231.7, subd. (f).) The Court of Appeal added that "no capable attorney would fail to challenge . . . a juror [like S.M.] unless the attorney had what is known in the trade as a dead-bang loser." (*SanMiguel*, at p. 891.) These characterizations overstate the record. The record does not indicate that S.M. was persistently inattentive to courtroom proceedings. It indicates that the prosecutor thought S.M. was paying less "attention to the process" than other jurors because S.M. "walked back in when the rest of the jury had already been excused." And it indicates that the prosecutor "fe[lt] like [other prospective jurors were] being more attentive" because they were "giving more eye contact to me" whereas S.M. was "kind of looking down." Given the purpose of section 231.7, and section 231.7(g) in particular, the statute requires courts to closely examine inferences like one equating looking down and avoiding eye contact with not paying attention as part of evaluating a section 231.7 objection.

Moreover, the prosecutor raised inattentiveness as a justification only after giving several other reasons for striking S.M. Of those initial reasons, the only one pertaining to S.M. was the brevity of his answers. That the prosecutor had no "reason to kick Hispanic people" and that he preferred "other people in the following six" does not explain why the prosecutor considered S.M. to be an undesirable juror. (Cf. *Batson*, *supra*, 476 U.S. at p. 98 [a prosecutor may not rebut a defendant's

prima facie case of purposeful discrimination " 'merely by denying that he had a discriminatory motive or "affirm[ing] [his] good faith in making individual selections" ' "]; see also *People v. Cisneros* (2015) 234 Cal.App.4th 111, 120–122 [prosecutor's stated reason that "she preferred the next prospective juror" was "in effect, no reason at all" because "whenever counsel exercises a peremptory challenge, it necessarily means that he or she prefers the next prospective juror to the one being challenged"].) It was only after the trial court requested clarification that the prosecutor added "[a]nother thing":  that S.M. was not fully following court orders, and then that S.M. was "kind of looking down" and not "being as engaged as other people [were]."  The Court of Appeal did not address this sequence of events in its analysis.

The Court of Appeal's opinion also did not address other relevant circumstances, such as "[t]he number and types of questions" the prosecutor posed to S.M.; the race of SanMiguel and the alleged victim; whether the prosecutor "question[ed] [S.M.] about the concerns later stated . . . as the reason for the peremptory challenge"; "[w]hether other prospective jurors . . . provided similar, but not necessarily identical, answers but were not the subject of a peremptory challenge"; and whether race "bear[s] on the facts of the case to be tried."  (§ 231.7, subd. (d)(3).)  Because the statute calls for de novo review (§ 231.7, subd. (j)), the Court of Appeal was required to evaluate the reasons given in light of the totality of circumstances to rule on the  section 231.7 objection.  Instead of engaging in this analysis, the Court of Appeal concluded that "S.M.'s lack of attention" both "overc[ame] the presumption of invalidity under section 231.7,  subdivision (g)(2)"  and  was  itself  "a

sufficient reason for [S.M.'s] dismissal." (*SanMiguel, supra*, 105 Cal.App.5th at p. 891.)

Because the Court of Appeal treated S.M. being *less* attentive as S.M. being *inattentive* and further concluded S.M.'s inattention by itself was dispositive as to the section 231.7(d)(1) determination, we reverse the judgment of the Court of Appeal and remand the case for further proceedings. On remand, the court may permit the parties to raise any additional argument concerning whether the prosecutor adequately explained his concerns about S.M.'s attentiveness. The court should also address whether, considering all of the prosecutor's reasons in light of the totality of the circumstances, an objectively reasonable person would view race as a factor in the peremptory challenge. (§ 231.7(d)(1).)

We end with a reminder for all litigants and courts that face similar issues. The Legislature enacted section 231.7 for the purpose of eliminating the taint of invidious discrimination, whether conscious or unconscious, from the selection of juries. If the statute is to fulfill that vital purpose, trial courts must exercise care in ruling on section 231.7 objections, mindful of the pernicious nature of the bias that the statute was designed to combat. Appellate courts, in turn, must give scrupulous consideration to the records before them to determine whether, considering all relevant circumstances, the proceedings failed to satisfy the principle of equal treatment embodied in section 231.7.

## IV.

We reverse the judgment of the Court of Appeal and remand for further proceedings consistent with this opinion.

**KRUGER, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**EVANS, J.**
**EGERTON, J.**[*]

---

[*] Associate Justice of the Court of Appeal, Second Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. SanMiguel

---

**<u>Procedural Posture</u>** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 105 Cal.App.5th 880
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S287786
**Date Filed:** July 30, 2026

---

**Court:**  Superior
**County:**  Ventura
**Judge:**  Ryan J. Wright

---

**Counsel:**

Matthew Alger, under appointment by the Supreme Court, for Defendant and Appellant.

Galit Lipa, State Public Defender, and Laura Rogers, Deputy State Public Defender, for the Office of the State Public Defender as Amicus Curiae on behalf of Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Chief Assistant Attorneys General, Susan Sullivan Pithey and Jeffrey M. Laurence, Assistant Attorneys General, Scott A. Taryle, Idan Ivri and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

Dan Dow, District Attorney, and Richard J. Sachs, Deputy District Attorney, for the Office of the District Attorney for the County of San Luis Obispo as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Matthew Alger
Attorney at Law
P.O. Box 1319
Erie, CO 80516
(559) 658-6500

Blythe J. Leszkay
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 269-6191